UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SHARON CASTRILLON, | ) |
|    Plaintiff, | ) ) ) |
|      vs. | ) CAUSE NO. 1:11-cv-430-WTL-DML ) |
| ST. VINCENT HOSPITAL AND HEALTH CARE CENTER, INC., et al., | ) ) ) |
|    Defendants. | ) ) |

## ENTRY ON MOTION TO DISMISS

This cause is before the Court on a motion to dismiss filed by Defendant St. Vincent Hospital and Health Care Center, Inc., ("St. Vincent") (dkt. no. 30). The motion is fully briefed and the Court, being duly advised, **GRANTS IN PART AND DENIES IN PART** the motion to the extent and for the reasons set forth below. The Plaintiff's motion to file a surreply (dkt. no. 60) is **DENIED**.

## I. MOTION TO DISMISS STANDARD

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all well-pleaded facts and draw all possible inferences in favor of the plaintiff. *Lake v. Neal*, 585 F.3d 1059, 1060 (7th Cir. 2009).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff has the obligation to provide the factual "grounds" of his entitlement to relief (more than "mere labels and conclusions"), and a "formulaic recitation of a cause of action's elements will not do." The complaint must contain "enough facts to state a claim to relief that is plausible on its face" and also must state sufficient facts to raise a plaintiff's right to relief above the speculative level. A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Bissessur v. Indiana University Bd. of Trustees*, 581 F.3d 599, 602 -03 (7th Cir. 2009) (citations omitted).

## II. FACTS ALLEGED IN THE COMPLAINT

The facts alleged by Plaintiff Sharon Castrillon in her complaint are as follow.

Castrillon entered the internal medicine residency program at St. Vincent Hospital ("St. Vincent") in June 2008. One of her supervisors was Defendant Steven Gerke, who was the associate director of the residency program. Castrillon and Gerke lived in the same neighborhood and became friends, periodically socializing together outside of work. Gerke pursued a romantic relationship with Castrillon, and the two had "some limited intimate encounters," but by the fall of 2008 Castrillon made it clear to Gerke she did not wish to be romantically involved with him. Gerke did not take no for an answer, however, and continued to pursue Castrillon with actions including expressing his affections for her in the workplace in front of her peers and St. Vincent faculty members, sending her love letters, and attempting to enlist her family's aid in changing her mind. His behavior escalated over time; he came to her house in the middle of the night yelling and banging on her door, he stole her trash and tried to break into her house, and he caused a scene in a hotel during a work-related trip, chasing her through the hotel and banging on the door to her room.

Defendant Maria Espinoza, who also worked at St. Vincent, was Gerke's girlfriend during the time he was pursuing Castrillon.[1] The complaint alleges that she "engaged in a campaign of harassment, spreading vicious rumors about Dr. Castrillon at St. Vincent and in Dr. Castrillon's neighborhood," including writing "demeaning and humiliating letters to Dr. Castrillon, pretending to be Dr. Gerke, and plac[ing] them in the workplace mailboxes of St. Vincent's faculty members." Complaint at ¶ 23.

In the spring of 2009, St. Vincent made the decision not to renew Gerke's employment contract. The complaint alleges that "upon information and belief," that decision was "based

---

[1]Espinoza has since married Gerke and taken his last name; the Court will nonetheless refer to her as Espinoza for the sake of clarity.

substantially" on the harassment of Castrillon by Gerke and/or Espinoza.

Shortly after the decision not to renew Gerke's contract was made, Castrillon was placed on academic probation by residency director Craig Wilson and told that her promotion to second-year resident was contingent on her successful completion of her probation. The decision to place her on probation purportedly was based on a pattern of tardiness in attendance and charting clinic notes, but Castrillon had been tardy only twice, once in September 2008 and once in January 2009, and her clinic notes were "not late, but left open so she could later amend and clarify them," a practice that had been permitted by Gerke. Castrillon alleges that Wilson placed her on probation in retaliation for the fact that Gerke's contract was not renewed because he and Gerke were close personal friends.

Castrillon successfully completed her probation and in late June 2009 signed an annual contract with St. Vincent which designated her as a second-year resident. However, on July 23, 2009, Wilson terminated Castrillon's employment. Wilson gave the following reasons: (1) Castrillon was tardy on June 6, 2009; and (2) Castrillon had failed to complete several charts in a timely manner.

On July 29, 2009, Castrillon appealed her termination to St. Vincent's Graduate Medical Education Committee ("GMEC"). On the same day, Castrillon "provided materials to Karen Iseminger, St. Vincent's ombudsman, about the harassment she suffered." Complaint ¶ 41. On August 7, 2009, the GMEC voted to reinstate Castrillon. In a letter acknowledging her successful appeal, Wilson set forth a variety of conditions of reinstatement, including:

- successfully completing St. Vincent's rehiring process, including completion of employment paperwork and pre-employment examination and testing;
- undergoing an evaluation of her physical health with her primary care physician and her psychological health with a professional selected by St. Vincent and undergoing any further evaluation and monitoring deemed necessary by St.

3

> Vincent;
>
> • repeating 10 months of the first-year residency program;
>
> • being ineligible for travel, elective off-site rotations, and moonlighting for at least the remainder of the calendar year; and
>
> • meeting with her faculty advisor at least monthly.

The letter also provided that there would be a "zero tolerance" policy in place, "meaning that any breach of the requirements set forth in this letter will be grounds for immediate termination without recourse." The complaint alleges that the requirements set forth in Wilson's letter were imposed unilaterally by Wilson, not by the GMEC, and some of them violated St. Vincent's obligations to its accrediting body, the Accreditation Council for Graduate Medical Education ("ACGME").

Castrillon was reinstated as a first-year resident on October 1, 2009, although she was reported as a second-year resident by St. Vincent to external agencies. She complied with all of the requirements set forth in Wilson's letter and met all applicable academic, professional and performance standards after her reinstatement. St. Vincent, however, took steps to impede her ability to do so, including requiring her to take an exam without advance notice, submitting her exam for evaluation as a second-year resident rather than the first-year resident she was classified as, and failing to provide appropriate guidance and mentoring.

On February 26, 2010, St. Vincent notified Castrillon that it would not renew her contract for the 2010-11 academic year. This notification was made one day after the final registration deadline for the National Resident Matching Program, thereby precluding Castrillon from seeking employment as a resident at another hospital. On March 17, 2010, Castrillon's employment was terminated by St. Vincent, effective the following day. The explanation given for her termination was as follows:

> On February 26th, Dr. Castrillon was notified of the decision by Internal

> Medicine Residency leadership in favor of non-renewal of her employment agreement, on the basis of substandard ACGME competency-based performance. Per ACGME requirements, she received notice four months in advance of the term of her employment agreement. Dr. Castrillon had been repeating her first year of residency following a successful appeal of an earlier termination. The terms of her reinstatement included a zero-tolerance policy against future breaches of professionalism.
>
> Following notification of this decision, Dr. Castrillon advised faculty members of her intent to pursue legal action against the program. One conversation is known to have occurred in a public arena. Dr. Castrillon was notified by Joyce Dobson, Manager of Medical Education, that such behavior was unprofessional and should cease immediately. Dr. Castrillon denied having engaged in such behavior, despite documentation to the contrary. In addition, Dr. Castrillon acknowledged but refused to sign a written request from the Department of Medical Education to avoid negative statements in public venues against the program and its leadership. In view of the zero tolerance policy of non-professionalism, Dr. Castrillon's position with St. Vincent hospital is being termed [sic.] effective March 18, 2010.

Complaint, Exhibit B. Castrillon alleges that Wilson made the decision not to renew her employment contract–or persuaded St. Vincent to do so–in retaliation for the fact that Gerke's contract had not been renewed and/or in retaliation for "what he perceived to be an attempt to vindicate her rights" under Title VII. Complaint at ¶ 62.

Castrillon attempted to appeal the second termination of her employment, but St. Vincent refused to consider her appeal on the ground that it was untimely because it was filed more than five calendar days after her termination.

### III. DISCUSSION

Castrillon filed this action against St. Vincent, Gerke, and Espinoza asserting a variety of claims. St. Vincent has moved to dismiss all ten of the claims asserted against it. Each of them is discussed, in turn, below.

#### A. Count I: Retaliation

Castrillon alleges that St. Vincent retaliated against her in numerous ways for her internal complaint about sexual harassment and/or because it believed she was threatening to pursue a Title VII claim against it. These alleged retaliatory actions include:

5

>	1.	terminating her employment the first time on July 23, 2009;
>
>	2.	imposing "zero tolerance" conditions on her employment after her successful appeal of her termination;
>
>	3.	not renewing her employment contract; and
>
>	4.	terminating her employment for the second time.

St. Vincent argues that Castrillon's allegations are insufficient to state a claim for retaliation because her "allegations reveal that she *did not* report *anything* to St. Vincent regarding the alleged actions of Gerke and Espinoza." St. Vincent Brief at 3. St. Vincent acknowledges the paragraph in the complaint in which Castrillon alleges that she "provided materials to . . . St. Vincent's ombudsman about the harassment she suffered," but argues that "even if true, it is unclear what 'harassment' Plaintiff is referring to or whether that harassment fell within the protections of Title VII." In light of the very specific allegations regarding the type of harassment Castrillon alleges she endured at the hands of Gerke and Espinoza, it is disingenuous for St. Vincent to claim that it is unclear what harassment she is referring to. Notice pleading simply does not require the type of specificity St. Vincent suggests is lacking. Castrillon's complaint adequately alleges that she was subjected to sexual harassment, that she complained of that harassment to St. Vincent's ombudsman, and that she subsequently suffered retaliation as a result. Similarly, Castrillon has adequately put St. Vincent on notice that she is alleging that she ultimately was terminated because St. Vincent believed she had threatened to take legal action against it to "vindicate her rights under Title VII." Complaint ¶ 62. Castrillon has stated a viable claim for retaliation.

### B. Counts II and III: Sexual Harassment and Retaliatory Harassment

St. Vincent moves to dismiss Castrillon's claim for sexual harassment on the ground that it is time-barred because the specific acts of harassment set forth in her complaint took place more than 300 days prior to the date she filed her EEOC charge. In response, Castrillon asserts in her brief that she continued to be sexually harassed by Espinoza throughout her employment with St.

Vincent. This assertion is not inconsistent with Castrillon's complaint and therefore may be relied upon to avoid dismissal.[2] *See Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1147 (7th Cir. 2010) ("We conclude that the Supreme Court's recent decisions, while raising the bar for what must be included in the complaint in the first instance, did not eliminate the plaintiff's opportunity to suggest facts outside the pleading . . . showing that a complaint should not be dismissed."). Because nothing in Castrillon's complaint forecloses the possibility that she was subjected to a hostile work environment within 300 days of the date she filed her EEOC complaint, and because she affirmatively alleges this to be the case in her brief in response to the instant motion, she has not pled herself out of court with regard to her claim for sexual harassment.

### C. Count IV: Sex Discrimination

The Court agrees with St. Vincent that Castrillon has not pled sufficient facts to state a claim that St. Vincent discriminated against her on the basis of her sex. The only allegation in her complaint that suggests that the adverse employment actions she complains of were taken because she was a woman–as opposed to in retaliation for the non-renewal of Gerke's contract or for the perceived threat that she was planning to pursue a Title VII action–is the allegation that "similarly situated male employees were not subjected to the same adverse employment actions." Complaint at ¶ 89. This, without more, is not sufficient to "nudge her [sex discrimination] claim . . . over the line to plausible." *Reynolds,* 623 F.3d at 1147. Accordingly, St. Vincent's motion to dismiss is **GRANTED** as to Count IV.

### D. Count V: Breach of Contract

In her complaint, Castrillon alleges that St. Vincent violated its employment contract with

---

[2]St. Vincent argues that Castrillon's assertion in her brief is inconsistent with her complaint, suggesting that the inclusion of some specific examples of harassment in the complaint somehow precludes a later allegation that additional harassment occurred. Nothing in Castrillon's complaint indicates that it was intended to be an exhaustive recitation of all relevant facts; quite to the contrary, Castrillon's description of acts of harassment by Espinoza is preceded by the phrase "among other things." Complaint ¶ 23.

7

her in two respects: (1) it failed to give her 120 days notice of its decision not to renew her contract; and (2) it failed to permit her to appeal its decision not to renew her contract and its decision to terminate her employment. In response to the instant motion, Castrillon concedes that she was, in fact, given the requisite 120-days notice. However, she argues that the second ground for her breach of contract claim remains viable because the employment contracted provided that she had five days to appeal her termination and she appealed within five business days. St. Vincent responds that the contract does not provide for five *business* days, but rather for five *days*. The Court agrees with Castrillon that the word "day" is ambiguous; as the Indiana Supreme Court has noted, "'[d]ay' may be defined as either 'the mean solar day of 24 hours beginning at mean midnight' or 'the time established by usage or law for work, school, or business.'" *Naugle v. Beech Grove City Schools*, 864 N.E.2d 1058, 1068 (Ind. 2007) (quoting *Koppin v. Strode*, 761 N.E.2d 455, 461 (Ind. App. 2002) (in turn quoting Merriam Webster's Collegiate Dictionary 294 (10th ed.1994))). Given this ambiguity, which the Court declines to resolve based only upon the pleadings, Castrillon has set forth a plausible breach of contract claim.

### E. Count VI: Third-Party Beneficiary

Castrillon alleges that she was a third-party beneficiary to the contract between St. Vincent and the ACGME, which is the body pursuant to which St. Vincent's residency program was accredited, and that the manner in which St. Vincent treated her breached certain of its obligations under that agreement. St. Vincent's argument in favor of dismissing this claim essentially boils down to the fact that it believes Castrillon does not have evidence to support her allegation–including a copy of the contract at issue or knowledge of what that contract's provisions are. In ruling on a motion to dismiss, however, the facts *as alleged* in the complaint must be taken as true, and Castrillon has *alleged* facts regarding the existence and content of a contract that adequately state a claim. Perhaps those allegations have no basis in actual fact and are, as St. Vincent suggests, based merely on speculation, but if so that is a Rule 11 issue, not a failure to state a

claim.

### F. Count VII: Promissory Estoppel

Castrillon's promissory estoppel claim is pled as an alternative to her breach of contract claim; in other words, it is a viable claim only in the event of a finding that there was no valid employment contract between her and St. Vincent. St. Vincent, citing *Decatur Ventures, LLC v. Stapleton Ventures, Inc.*, 373 F.Supp.2d 829 (S.D. Ind. 2005), argues that inasmuch as there is no dispute regarding the existence and validity of the employment contract, the promissory estoppel claim should be dismissed. The Court agrees that given St. Vincent's admission in its reply brief that the employment contract is valid and enforceable, it is appropriate to dismiss this alternative claim and therefore **GRANTS** St. Vincent's motion as to Count VII. The Court notes, however, that St. Vincent overreaches with its argument that "[g]iven the holding of *Decatur Ventures, LLC*, Plaintiff [sic.] position [that the claim should not be dismissed until St. Vincent formally admits the existence of a valid and enforceable contract] is at best disingenuous and at worst violative of Rule 11's prohibition of needlessly increasing litigation costs." First, *Decatur Ventures, LLC,* is not binding precedent; it cannot violate Rule 11 for a party to urge a result that differs from a single non-precedential decision. Second, it is not at all clear to the Court how allowing this alternative claim to remain in the litigation at this stage would have increased St. Vincent's litigation costs in any significant way. Indeed, inasmuch as it was clearly not inappropriate for Castrillon to plead the claim in the alternative initially because she had no way of knowing whether St. Vincent would dispute the validity of the contract, it seems that rather than moving to dismiss it would have been more efficient for St. Vincent to simply admit the existence and validity of the contract and then ask Castrillon to dismiss the claim voluntarily.

### G. Count VIII: Breach of Implied Covenant of Good Faith and Fair Dealing

Castrillon alleges that St. Vincent owed her "a duty of good faith and fair dealing, to aid her in her academic and professional development" and that St. Vincent breached that duty by

9

> refusing to provide adequate academic and professional guidance, and by implementing obstacles for the purpose of causing Dr. Castrillon to fail, including, but not limited to, scheduling Dr. Castrillon's work and exams to ensure that Dr. Castrillon would not have any opportunity to study or prepare, and by providing notice of the non-renewal of her employment contract after the final registration deadline to enter the NRMP.

Complaint at ¶ 110. St. Vincent, citing *Gordon v. Purdue University*, 862 N.E.2d 1244 (Ind. App. 2007), argues that no such duty exists under Indiana law in the academic context.[3] *Gordon* does not so hold; rather, *Gordon* expressly notes that "Indiana has recognized the existence of implied terms in the contract between student and university," 862 N.E.2d at 1251, including the requirement that a university use its "good faith judgment" in making its decisions regarding its students. In *Gordon*, the trial court granted summary judgment in favor of the defendant on Gordon's breach of contract claim, but then granted Gordon leave to file an amended complaint asserting a claim for bad faith breach of contract. The appellate court held that the trial court then properly dismissed Gordon's claim for bad faith because he had "simply reasserted his original claims under a label of bad faith" and therefore had alleged only negligence or breach of contract, not "the conscious doing of a wrong because of dishonest purpose or moral obliquity" required for a bad faith claim.

St. Vincent's citation to *Bissessur v. Indiana Univ. Bd. of Trustees,* 581 F.3d 599 (7th Cir. 2009),[4] fairs no better than its reliance on *Gordon*. In *Bissessur*, the court held that the following allegations were insufficient to state a claim for breach of implied contract:

Count II: Breach of Implied Contract

36. An implied contract existed between Bissessur and IU.

---

[3] The Court assumes for purposes of this ruling that St. Vincent is correct that Castrillon's relationship with St. Vincent should be analyzed as that of a student rather than that of an employee.

[4] St. Vincent inexplicably cites to the unpublished district court opinion in *Bissessur* rather than the published appellate decision.

> 37. IU breached the implied contract that existed between Bissessur and IU.
>
> 38. IU's actions were arbitrary, capricious, and undertaken in bad faith.

This is a paradigmatic example of pleading that is too "sketchy" to adequately inform the defendant of the claims against it and assertions that do not contain enough detail to state a plausible claim. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (noting that "courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim").

In this case, on the other hand, Castrillon points to several specific actions that she alleges St. Vincent took with the purpose of causing her to fail as a resident and to substantially delay the completion of her medical education. The facts alleged by Castrillon are sufficient to state a claim that her supervisors at St. Vincent took these actions in bad faith and therefore violated the duty of the implied duty discussed in *Gordon*.

### H. Count IX: Negligent Hiring/Retention

Castrillon alleges that St. Vincent knew or should have known that Gerke and Espinoza "had a history of harassment" and that it "hired and/or retained Dr. Gerke and Ms. Espinoza despite having this knowledge" which, in turn, led to Castrillon being subjected to harassment by them.

St. Vincent first argues that this claim is untimely. That argument is without merit for the reasons set forth above in the discussion regarding Counts II and III.

St. Vincent is correct, however, that Castrillon has pled no facts that suggest that Gerke or Espinoza "had a history of harassment" when St. Vincent hired them or, if they did, that St. Vincent was aware of that history. Accordingly, Castrillon has not stated a plausible claim for negligent hiring, and St. Vincent's motion is **GRANTED** as to that claim.

With regard to Castrillon's claim for negligent retention, St. Vincent argues that it must fail because under Indiana law such a claim requires that the employee in question was likely to cause

11

*bodily* harm to others and Castrillon has not alleged this to be the case with regard to Gerke or Espinoza. The Court is not convinced that either Indiana case law or the Restatement (Second) of Torts upon which it is based requires a risk of *bodily* harm; rather, the relevant section of the Restatement reads as follows:

> A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others **or** from so conducting himself as to create an unreasonable risk of bodily harm to them, if
>
> > (a) the servant
> > > (i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
> > > (ii) is using a chattel of the master, and
> > (b) the master
> > > (i) knows or has reason to know that he has the ability to control his servant, and
> > > (ii) knows or should know of the necessity and opportunity for exercising such control.

REST. 2d TORTS § 317 (emphasis added). Castrillon alleges that St. Vincent knew that Gerke and Espinoza were intentionally harming Castrillon by harassing her and unreasonably failed to take action to stop them from doing so. Based upon the plain language of the Restatement, the Court does not believe that the fact that the harm involved was not *bodily* harm is fatal to this claim.[5]

### I. Count X: Fraud

Finally, Castrillon alleges that St. Vincent's August letter reinstating her employment constituted fraud because it falsely represented that the GMEC had made her reinstatement conditional on her agreement to "certain onerous employment terms and conditions" when, in fact, the conditions were imposed by Wilson, not the GMEC. Castrillon alleges that she "justifiably relied on these false representations, and did not challenge these onerous conditions on the

---

[5]The Court recognizes that St. Vincent cites to *Treat v. Tom Kelley Buick Pontiac GMC, Inc.*, 710 F.Supp.2d 762 (N.E. Ind. 2010), which indeed can be read to support the position taken by St. Vincent. To the extent that it does, the Court respectfully disagrees with the *Treat* decision.

understanding that they were necessary to have her employment reinstated." Complaint ¶ 121. St.. Vincent's motion to dismiss this claim is based upon its reading of the employment contract between Castrillon and St. Vincent in which Castrillon agreed "to perform such duties and responsibilities to the best of [her] abilities and at a satisfactory level of competence, as determined by the Program Director [Wilson] and the Hospital's Director of Medical Education." St. Vincent argues that this language gave Wilson the discretion to "determine Plaintiff's duties and responsibilities as well as the discretion to determine Plaintiff's level of competence" and therefore "he could not have 'falsely' conveyed the terms and conditions of employment as Plaintiff alleges." St. Vincent Brief at 21. The Court disagrees that the contract language cited by St. Vincent compels such a result. Rather, the quoted language refers to Castrillon's obligation to perform "such duties," and "such duties" in turn refers to "the duties and responsibilities as outlined in the most recent version of the Handbook, including but not limited to the following [sic] all regulations and policies of the Hospital, the Hospital's Medical Education Department and the Program, and conducting oneself in a manner consistent with [certain ethical standards]." Therefore while the quoted language gives Wilson the discretion to determine whether Castrillon was performing her duties and responsibilities at a satisfactory level, it does not, on its face, give him the discretion to *define* what those duties and responsibilities are; in other words, it does not, as St. Vincent alleges, give him the discretion to establish the terms and conditions of her employment. Accordingly, St. Vincent has not demonstrated that Castrillon's fraud claim is without merit on its face.[6]

### IV. CONCLUSION

For the reasons set forth above, St. Vincent's motion to dismiss (dkt. no. 30) is

---

[6]St. Vincent's argument in its reply that Castrillon has not adequately pled how she was injured by the fraud she alleges ignores her allegation that she forewent the opportunity to challenge the employment conditions imposed by Wilson because she believed they were imposed by the GMEC.

13

**GRANTED** as to Count IV (sex discrimination) and Count VII (promissory estoppel) and as to the negligent hiring claim contained in Count IX.[7] The motion is **DENIED** in all other respects. Castrillon's motion to file a surreply (dkt. no. 60 ) is **DENIED**.

SO ORDERED: 01/10/2012

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification

---

[7] If Castrillon believes it is appropriate, she may, of course, move to amend her complaint to replead these claims to address the deficiencies discussed herein, subject to the applicable deadline for motions to amend pleadings. *See Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010) (Generally, if a district court dismisses for failure to state a claim, the court should give the party one opportunity to try to cure the problem, even if the court is skeptical about the prospects for success.").